67 So.2d 635 (1953)
CADORE
v.
CADORE et al.
Supreme Court of Florida. Division A.
October 13, 1953.
Rehearing Denied November 13, 1953.
*636 Yonge, Whiteside & Prunty, Miami, for appellant.
Sczudlo & Patterson, and Shutts, Bowen, Simmons, Prevatt & Julian, Miami, for appellees.
MATHEWS, Justice.
This is an appeal from a final decree finding that the appellees were entitled to the proceeds of a certain life insurance policy. The pertinent facts upon which the final decree was based are simple, plain and undisputed.
Thorndyke Cadore and Martha Cadore were legally married and as a result of such marriage there were three children. The husband and wife were having marital difficulties which resulted in a suit for divorce. The final decree in the divorce proceeding was granted to the wife in March of 1945. At the time of the divorce their three children were of the ages of 21, 17 and 15 years. At the time of this proceeding each of the children was over 21 years of age.
Throughout the pleadings and briefs the parties refer to a property settlement entered into in connection with the suit for divorce. As shown by the stipulation filed in that suit and the final decree of divorce, the settlement was not simply a property settlement but was also an agreement for the payment of alimony and for the maintenance and support of the minor children of the parties, and for the custody of such minor children. The stipulation contained the following:
"Whereas, the parties to said divorce action are now desirous of effecting a property settlement regarding their rights, as well as the care, custody and control of the minor children of the respective parties, it is, thereupon, Stipulated and Agreed by and between said parties as follows:

* * * * * *
"4. It is further Stipulated and Agreed that upon the execution of this stipulation, the defendant will pay to the plaintiff, the sum of Two Hundred ($200.00) Dollars, currency of the United States of America, and that he will further pay to the Plaintiff, Martha Cadore, the sum of Seventy-five ($75.00) Dollars per month, as alimony and support money for the Plaintiff, and the aforesaid two minor children of the respective parties.
"5. It is further Stipulated and Agreed that the Defendant is now the insured with the Equitable Life Insurance Company, in the sum of Three Thousand ($3,000.00) *637 Dollars, under Policy No. 9092403, in which policy the plaintiff is the beneficiary, and that upon the execution hereof the defendant will have the beneficiary in said policy changed from Martha Cadore, to Robert Cadore, Dorothy Cadore, and Carol Cadore, being the three children of the respective parties, each child to share equally in the proceeds of said insurance policy."
The final decree ratified and approved the stipulation and specifically contained the following:
"(d) That the beneficiary named in that certain life insurance policy, issued by the Equitable Life Insurance Company, in the sum of Three Thousand ($3,000.00) Dollars, being Policy No. 9092403, in which policy Martha Cadore is the beneficiary, and the said Thorndyke Cadore, defendant, is the insured, be changed from said Martha Cadore to Robert Cadore, Dorothy Louise Cadore, and Carol Jean Cadore, the children of the respective parties, and that said children shall be named beneficiaries under said policy, instead of said Martha Cadore, and shall share equally in the proceeds therefrom."
Subsequent to the entry of the final decree Thorndyke Cadore and Martha Cadore each married again.
In March, 1952, Thorndyke Cadore was killed by accidental means and the insurance policy providing for double indemnity matured.
At the time of the death of Thorndyke Cadore, and the maturity of the policy, each of the children was over 21 years of age. The life insurance policy was in the possession of the widow of Thorndyke Cadore, who for some years prior to Cadore's death had paid the premiums on such policy. Some years after Cadore's marriage to this second wife, he changed the beneficiary of the policy to the new wife.
The widow, the appellant here, and the children by the first marriage claimed the proceeds of this policy. These conflicting claims finally resulted in an interpleader by the insurance company and the payment of the proceeds of the policy into the registry of the Court. Summary judgment was entered in favor of the appellees (the children by the first marriage) and a final decree entered decreeing that the children were entitled to the full proceeds of the policy less certain costs and expenses and also an amount to be allowed the appellant to reimburse her for the premiums paid upon the insurance policy.
Cadore complied with the terms of the stipulation and the final decree and named the children beneficiaries. Such change of beneficiary was revokable. The insured still had the right under the terms of the policy to change the beneficiary at will. He had the right to assign the policy or to accept a cash settlement from the insurance company, or the right not to pay any further premiums and thereby suffer a cancellation of the policy. The insurance company was not a party to the divorce suit and neither were the children, except that the Court did have jurisdiction of the two minor children under proper showing or stipulation to provide for their support and maintenance. The mere change of beneficiary to the children and with the retention of possession of the policy and the right to further change the beneficiary prevents the transaction from being a gift of the policy.
Not only did Cadore remain in possession of the policy for awhile but he afterwards delivered possession thereof to his second wife and she actually paid the premiums. If the premiums had not been paid, the policy would have lapsed under its own terms.
A life insurance policy is a chose in action and may be assigned in the same manner that other instruments of like character are assigned unless there is some restraining clause denying the insured the right to change the beneficiary or make an assignment. McMullen v. St. Lucie County Bank, 128 Fla. 745, 175 So. 721; Moon v. Williams, 102 Fla. 214, 135 So. 555.
The right of the insured to change the beneficiary of an insurance contract where that right is expressly reserved in *638 the insurance policy is undisputed unless there has intervened some valid and legal restraint upon which the insurance company is put upon notice. Vol. 29 Am.Jur., sec. 1314, pp. 981, 982, 983 and 984.
In John Allan Appleman's "Insurance Law and Practice", Vol. 2, Sec. 901, on pages 287 and 293, it is stated:
"Ordinarily under old line contracts, it is usually considered that the insured has the title to the insurance, of which only a clear and unequivocal act could divest him. * * *
"The beneficiary securing no vested interest when the power to change is reserved, the insured has the right to regard the contract in all ways as his own property and to assign it, cancel it, or make a settlement thereof without the beneficiary's consent. Thus, the act of surrender would extinguish the rights of the beneficiary, as would a pledge of the policy. * * *"
The case of Kohler v. Kohler, 9 Cir., 104 F.2d 38, 41, is very similar to the situation now before us. In that case the Court said:
"The decree must be affirmed. The change of beneficiary from appellant to appellee was in conformity with insurer's bylaws and was valid and effective, notwithstanding the contract of February 20, 1929, between decedent and appellant, wherein decedent agreed that appellant should remain his beneficiary. * * *
"Insurer and appellee were not parties to the contract of February 20, 1929, and, consequently, were not bound thereby. That contract was binding, if at all, only on decedent and appellant. If, as claimed by appellant, the contract was valid and was breached by decedent, her remedy was against him or his estate. Decedent was not, nor was his estate, a party to this litigation. * * *"
In the case of Miller v. Gulf Life Ins. Co., 152 Fla. 221, 12 So.2d 127, 130, on Rehearing Granted, this Court, speaking through Mr. Justice Sebring, said:
"The right of the lawful owner to pass title to such policy by gift is not within the control of the company, and is something about which it may exercise no concern absent a stipulation in the policy prohibiting it. * * *
"Upon a valid gift of such policy having been made, absolute title and ownership vests in the donee; and thereafter the donor has no power or control over it. A beneficiary has no such present interest in the policy. His is only an inchoate right to the proceeds, subject to be divested at any time during the lifetime of assured, by transfer, assignment, or change of beneficiary.
"* * * it is apparent that no vested rights have accrued to the estate of assured, either by reason of the policy under consideration having been made payable to the estate, or by reason of the failure to effect change of beneficiary. It is clear, therefore, that when the gift of the policy was consummated, not only did Edrie V. Strickland acquire title to the policy, but she became entitled to the proceeds of the policy at the death of the assured as well. * * *"
The appellees urge that the holding in the above case is in their favor because there was an express agreement between the husband and the first wife, ratified by a Court order. This stipulation, ratified by the Court in the final decree, did not constitute a valid gift of the policy. It is significant that the appellees permitted the insured to retain possession of the policy, with the right remaining in him so far as third parties and the insurance company were concerned to change the beneficiary at will. It is significant that the appellees took no steps to prevent an assignment or gift of the policy, and permitted insurance premiums to be paid by a new beneficiary named by the insured.
It may be that the appellees had some right against the estate of Thorndyke Cadore for breach of contract. It is unnecessary to decide, and we do not decide, that question in this case.
We do decide that under the undisputed facts in this case, the appellant was *639 entitled to the proceeds of the life insurance policy in question and the wrong rule of law was applied in determining and deciding that the appellees were entitled to such proceeds in a claim or suit between such appellees and the appellant.
It was error to enter a summary judgment and final decree in favor of the appellees. The claim asserted by the appellees against the appellant should have been dismissed.
Reversed, for further proceedings in accordance with this opinion, and without prejudice to any alleged rights or claims which the appellees may have against any other person or persons, and in any other proceeding or proceedings.
ROBERTS, C.J., and TERRELL and SEBRING, JJ., concur.